# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Christopher James Taylor | ) | CASE NO. 1:13 CV 1141 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge Vernelis Armstrong |
| | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OPINION |

This matter is before the Court on the Report and Recommendation of Magistrate Judge Vernelis Armstrong. ECF # 20. The Magistrate Judge recommends that the Commissioner of Social Security's final determination denying Plaintiff, Christopher Taylor's claim for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* and 405(g), be vacated and the case remanded. The Court concludes that substantial evidence supports the decision of the Administrative Law Judge's ("ALJ") and, therefore, remand is unnecessary.

As set forth by the Magistrate Judge, the procedural history of the case is as follows:

PROCEDURAL BACKGROUND

Plaintiff previously applied for disability benefits. His claim was denied on October 11, 2006 and he did not appeal. His protective filing date is April 20, 2010 and his date last insured is December 31, 2004 (Docket No. 13, pp. 178-179 of 887).

On April 27, 2010, Plaintiff applied for SSI and any federally administered state supplementation under Title XVI, alleging that he became

1

disabled on December 31, 2000[1] (Docket No. 13, pp. 130-132 of 887). His application was denied initially and upon reconsideration (Docket No. 13, pp. 75-77; 78-80; 86-88 of 887). On September 9, 2011, Administrative Law Judge (ALJ) Frederick Andreas conducted a hearing at which Plaintiff, represented by counsel, and Deborah Lee, a Vocational Expert (VE) appeared and testified (Docket No. 13, p. 29 of 887). The ALJ issued an unfavorable decision (Docket No. 13, pp. 20-28 of 887). The Appeals Council denied review of the ALJ's decision on March 19, 2013, thus rendering the ALJ's decision the final decision of the Commissioner (Docket No. 13, pp. 5-8 of 887).

## FACTUAL BACKGROUND.
A. PLAINTIFF'S TESTIMONY

Plaintiff was 5"9"tall [sic] and he weighed 155 pounds. Plaintiff was a high school graduate and he could read, write and complete basic mathematics. A divorcé and a veteran of the Persian Gulf War, Plaintiff was raising his minor child. Although Plaintiff had a driver's license, he drove sparingly because it was stressful and the jarring exacerbated his neck injury (Docket No. 13, pp. 37-39 of 887). Plaintiff's income was derived from Workers Compensation Insurance and the Veteran Administration (Docket No. 11, pp. 50; 51; 699 of 887).

During the course of employment as diesel mechanic for the Truckmen Corporation, Plaintiff sustained a shoulder injury on November 15, 1999 [after using his right arm to brace himself from a falling semi-tire]. The pain in his shoulders radiated into his arms and hands, leaving them weak and numb. Plaintiff's attempt to return to his prior line of work after completing therapy was without success. Plaintiff contended that he was unable to perform a modified, sedentary workload since his neck and shoulder pain could easily be exacerbated by a lack of orthopedic and/or cervical support (Docket No. 13, pp. 39-40; 41; 54; 55 of 887).

Having undergone at least two shoulder surgeries, three neck surgeries and unlimited stints of physical therapy, Plaintiff still experienced substantial stiffness and shooting pain in his shoulders and neck that radiated to his head and caused migraine headaches. On an ascending scale with zero being nonexistent and ten indicating severe pain, Plaintiff rated his pain level at eight to nine (Docket No. 13, pp. 41; 42 of 887).

During the two months preceding the hearing, Plaintiff began averaging two to three migraine headaches a week, each headache lasting from twenty minutes to three hours. Nausea accompanied the headaches. With his medical history, it was difficult to obtain medical treatment so he used cold packs, a dark room and quiet to alleviate the migraine (Docket No. 13, pp. 46-47 of 887).

---

[1] During the hearing, counsel amended Plaintiff's onset date of disability to April 20, 2010 (Docket No. 13,pp. 40-41 of 887).

2

> Diagnosed with a depressive disorder, Plaintiff treated with a counselor at PSYCHCARE, a comprehensive behavioral care provider, bimonthly (Docket No. 13, p. 49 of 887; http://psychcare.com). Plaintiff acknowledged that he had difficulty remembering and concentrating; and that both difficulties affected his ability to drive or watch television (Docket No. 13, pp. 57-58 of 887).
>
> Plaintiff's drug regimen included:
>
> - Percocet®, a pain reliever (PHYSICIAN'S DESK REFERENCE, 2006 WL 68853).
> - Naproxen, a nonsteroidal anti-inflammatory drug (PHYSICIAN'S DESK REFERENCE, 2006 WL387492).
> - Lyrica®, generally prescribed for the management of neuropathic pain associated with diabetic peripheral neuropathy (PHYSICIAN'S DESK REFERENCE , 2006 WL 384608).
> - Amitriptyline, an antidepressant (www.rxlist.com.elavil-drug.htm).
>
> The side effects from these combined medications--grogginess, sleepiness and numbness--made it difficult to get up daily and even more difficult one he got up to perform ordinary housework or drive (Docket No. 13, pp. 43-45; 51 of 887). The medication even affected his ability to stand, sit and walk. Plaintiff estimated that he could walk for ten to fifteen minutes; stand for five to ten minutes; and sit for twenty minutes (Docket No. 13, pp. 45-46 of 887).
>
> Typically Plaintiff slept for three to four hours each night before his neck pain erupted (Docket No. 13, p. 51 of 887). He arose at 5:00 A.M., fed his daughter and prepared her for school. He then sat and listened to the radio while drinking coffee. He performed household chores intermittently with breaks. Plaintiff paced himself when performing outside chores (Docket No. 13, pp. 51-52 of 887). Plaintiff suggested that during 75% of the day when he was awake, he had to support his neck (Docket No. 13, p. 56of 887). Plaintiff did perform stretches with rubber bands to prevent atrophy and maintain muscle tone (Docket No. 13, p. 58 of 887).

(Report and Recommendation at pp. 1-3.)

**Medical Evidence**

The Plaintiff suffers from several ailments: a rotator cuff tear, cervical stenosis, status post cervical fusion, bone spurs, right impingement syndrome, right supra spinatus tear, herniated discs at C5-C7, depression, and migraines. Dr. Jurenovich, the Plaintiff's primary care physician, recommended that the Plaintiff could: (1) carry less than ten pounds, (2) push or pull

ten pounds or less with his upper extremities, (3) occasionally stand, but never climb, stoop, kneel, crouch, or crawl, (4) handle, see, hear, speak and perform tasks with his hands, and (5) sit down. Dr. Jurenovich also recommended that the Plaintiff be limited to part-time work as the Plaintiff had occasional (defined as two to three cumulative hours in an eight hour work day) physical limitations.

In addition to Dr. Jurenovich, the Plaintiff saw Drs. Brocker and Massullo. Both doctors disagreed with Dr. Jurenovich's conclusion that the Plaintiff could not lift or push ten pounds. In addition, both doctors felt that the Plaintiff could perform full-time, sedentary work, if allowed to sit down. Further, Dr. Massullo observed that the Plaintiff had an 80% range of motion in both shoulders and that his coordination, grasp, and manual manipulation were within the normal ranges. Dr. Brocker also concluded that Plaintiff could not do a lifting, bending, or twisting-type job and he could not lift more than 25 pounds, but that he "should receive training for a non-lifting job so he can be productive for the rest of his life."

The ALJ noted that the Plaintiff suffered from several ailments. The ALJ concluded that none of these impairments, individually or in combination, constituted a disability under the Social Security Act and denied the Plaintiff SSI. In reaching the decision, the ALJ gave weight to all of Dr. Jurenovich's recommendations, except for the Plaintiff's restriction to lifting or moving ten pounds as the evidence did not support it. The ALJ therefore concluded that the Plaintiff could perform sedentary work that allowed him to sit down and did not require reaching, climbing, kneeling, crouching, or crawling.

Plaintiff filed his Complaint with this Court on May, 21, 2013, challenging the final decision of the Commissioner. ECF # 1. In his Complaint, Plaintiff asserts that he is legally and factually disabled and that the Commissioner's findings are not supported by the evidence.

On March 14, 2014, the Magistrate Judge issued her Report and Recommendation. ECF # 20. The Magistrate judge recommends that the decision of the Commissioner be reversed and remanded to "conduct a review…consistent with its own rules and determine if…Plaintiff is disabled and entitled to disability benefits." The Magistrate Judge found that the ALJ did not give appropriate weight to the Plaintiff's treating physician, and that, contrary to the ALJ's determination, the Plaintiff provided substantial evidence to prove his migraines were a severe impairment.

On March 26th, 2014, the Commissioner filed objections to the Report and Recommendation. ECF # 21. The Commissioner argues that the ALJ's decision was sufficiently detailed with regard to the weight he assigned each medical opinion and that the ALJ's determination is supported by the record as a whole. The Commissioner raised no specific objections to the Magistrate Judge's findings on the Plaintiff's migraines.

### Standard of Review

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept,

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. The Commissioner's conclusion must be affirmed "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. Tenn. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. Mich. 2004)). Substantial evidence is evidence that a "reasonable mind might accept… as adequate to support a conclusion." *Id*. If substantial evidence exists to support the Commissioner's conclusion, this court must affirm that conclusion "even if there is substantial evidence… that would have supported the opposite conclusion." *Id*.

## Discussion

Plaintiff argues that the ALJ's decision to reject the opinions of the Plaintiff's treating physician is not supported by substantial evidence.

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has thoroughly considered the entire record in this case, including all of the pleadings, transcripts, and filings of the parties, as well as the Objections to the Report and Recommendation filed by the Commissioner. The Court has reviewed, in detail, the decision of the ALJ. The ALJ's decision was supported by substantial evidence and, therefore, remand is unnecessary.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ must articulate "good reasons" if he determines that a treating physician's opinion is not entitled to controlling weight. *Vorholt v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 883, 888 (6th Cir. Ky. 2011) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. Mich. 2009)). "While medical experts may opine in a claimant's litigation, 'the ultimate decision of disability rests with the [ALJ].'" *Id.*; 20 C.F.R. § 404.1527(e)(1).

The ALJ thoroughly reviewed the medical opinions of Plaintiff's treating physicians in the context of the entire record in this case. The ALJ may discount a treating physician's credibility to a certain degree where the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. Mich. 1997) (citing *Bradley v. Secretary of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. Ky. 1988)). "An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.2d, at 532 (citing *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. Mich. 1990); *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d 450, 453 (6th Cir. Ohio 1986)).

Here, the ALJ examined the record and noted in detail the weight attributed to the Plaintiff's testing physician:

> I give the opinion of Dr. Jurenovich some weight and I disagree with the counsel's argument that Jurenovich's opinion limits the claimant [to] only part time work. First, although Dr. Jurenovich has circled "2-3 cumulative," this is contrary to the fact he opined the claimant had no limitations with sitting. Second, it is not clear what type of job Dr. Jurenovich is contemplating (the claimant's past jobs or all jobs), or whether this limitation is just for the walking and

7

standing portion of the workday. In addition, Dr. Jurenovich did not opine that the claimant's impairments would cause him to be absent from work. In addition, the form fails to provide an onset date or set forth how long the impairments will last. In addition, the record does not support a lifting limitation of less than ten pounds. I note that Dr. Jurenovich's opinion regarding the claimant having no sitting or handling limitations, but some reaching limitations, is supported by the record. I gave these opinions adequate weight when determining the claimant's residual functional capacity (Transcript. 20-21).

Thus, while recognizing the importance of Dr. Jurenovich's opinion, the ALJ only gave weight to those portions supported by evidence. Therefore, the ALJ gave no weight to the ten pound lifting or moving limitations because the record did not support them, while giving some weight to Dr. Jurenovich's opinion that Plaintiff had no sitting or handling, but some reaching, limitations.

For support, the ALJ considered the opinion of Dr. Massullo, a medical consultant that examined the Plaintiff at the agency's request, and Dr. Brocker, a neurologist that examined the Plaintiff at Dr. Jurenovich's request. The ALJ gave their opinions more weight as they were consistent with the evidence. Neither opined that the Plaintiff should be limited to lifting ten pounds. Further, both opinions, as well as Dr. Jurenovich's, support the ALJ's finding that the Plaintiff could perform sedentary work that did not involve reaching, climbing, kneeling, crouching, or crawling.

In addition, the ALJ relied on Dr. Massullo's examination. She determined that the Plaintiff had 80% range of motion in his shoulders and could grab and manipulate objects with both hands. Her analysis also determined that his motor skills, sensory system, and coordination were intact with no signs of atrophy. In addition, the Plaintiff's C4-C7 discs retained the surgical hardware and incorporated an earlier bone graft. The Plaintiff also told her that he could walk up

to three miles a day and up and down stairs with railing and that he was "fair" in completing his normal household activities.

Dr. Brocker's examination also concluded that the Plaintiff had full arm and leg strength with no signs of atrophy. Dr. Brocker concluded that the Plaintiff had a "little bit of arthritic changes" in his shoulder and neck area, but could otherwise perform work that did not involve lifting, bending, bodily-twisting, or lifting more than twenty-five pounds. However, Dr. Brocker felt that the Plaintiff could still work and recommended that the Plaintiff "should receive training for a non-lifting job so he can be productive the rest of his life." (Transcript 663).

In conclusion, the record contained substantial evidence allowing the ALJ conclude that the Plaintiff could still work. The ALJ had two doctors opining that he could still perform full-time, albeit sedentary, work. In addition, Dr. Jurenovich's opinion is mostly consistent with the ALJ's finding, with the exceptions of the ten pound lifting and part-time working limitations. The ALJ properly rejected these recommendations since they were unsupported by the record. Because the ALJ had the substantial evidence necessary to deny the Plaintiff's claim, and a reasonable person could reach the same conclusion, this Court cannot re-weigh the facts.

## Conclusion

For the foregoing reasons, the Court does not agree that the Report and Recommendation of the Magistrate Judge that the final decision of the Commissioner be reversed and the case remanded for a new decision. The ALJ adequately explained the weight accorded to the medical opinions of record and, therefore, remand is unnecessary. Accordingly, the Court does not adopt the Report and Recommendation.

The Commissioner's final determination denying Plaintiff's application for Supplemental Social Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* and 405(g) is supported by substantial evidence and is hereby AFFIRMED.

This case is hereby TERMINATED

IT IS SO ORDERED

                                            */s/Donald C. Nugent*
                                            DONALD C. NUGENT
                                            United States District Judge

DATED: July 7, 2014